**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CHERA HARRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-16-1054-STE** |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.[1]** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for supplemental security income and disability insurance benefits under the Social Security Act. The Commissioner has answered and filed the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    PROCEDURAL BACKGROUND

Plaintiff's applications for supplemental security income and disability insurance benefits were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-26, 776-785). The Appeals Council denied Plaintiff's request for review. (TR. 790-792). Plaintiff filed a federal appeal and this Court remanded the case to the Appeals Council for reconsideration of: (1) medical opinions including those offered by treating and non-treating sources and (2) whether Plaintiff had satisfied the criteria for Listings 11.02 or 11.03. (TR. 802). Following the Court's order, the Appeals Council remanded the case to a second ALJ for reconsideration of the issues as outlined by the District Court. (TR. 805-807).

Following two administrative hearings, a second ALJ issued a Recommended Decision. (TR. 597-653). In the Notice of the Recommended Decision, the ALJ noted that this decision was not the Commissioner's final decision, but that the decision would be sent to the Appeals Council who would consider the evidence and decide whether to adopt, modify, or reject the Recommended Decision. (TR. 594); *see* 20 C.F.R. §§ 404.979 & 416.1479. The Appeals Council adopted the decision of the ALJ in its entirety. (TR. 585-588). Thus, the July 15, 2016 decision of the Appeals Council became the final decision of the Commissioner. *See Brown v. Bowen*, 801 F.2d 361, 362, n. 1 (10th Cir. 1986) ("In the instant case, the Appeals Council adopted the ALJ's recommended decision and it is this action by the Appeals Council which is the final agency decision for review.").

## II.    STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). As stated, the Commissioner's "final decision" is that issued by the Appeals Council on July 15, 2016. *See supra*, *Brown v. Bowen*. While the court will review the Appeals Council's decision, "to the extent the Council has adopted, agreed with, or otherwise relied on other decisions in the record, the court will include those evaluations and explanations in its review." *Blevins v. Astrue*, Case No. 07-1342-JWL, 2011 WL 843961, at *5 (D. Kan. Mar. 8, 2011).

While the court considers whether the ALJ and the Appeals Council followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## III.    THE ADMINISTRATIVE DECISION

The ALJ and the Appeals Council followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ and the Appeals Council determined that Plaintiff had not engaged in substantial gainful activity since July

27, 2009, the alleged disability onset date. (TR. 587, 610). At step two, the ALJ and the Appeals Council determined that Ms. Harris had the following severe impairments: pseudo-seizure; seizure; migraine headache; hypothyroidism; essential hypertension; obesity; a depressive disorder, not otherwise specified; a learning disorder, not otherwise specified; an anxiety-related disorder; and a personality disorder. (TR. 587, 610). At step three, the ALJ and the Appeals Council found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 587, 632).

At step four, the ALJ and the Appeals Council found that Plaintiff had no past relevant work. (TR. 588, 651). The ALJ and the Appeals Council further concluded that Ms. Harris had the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is to avoid all exposure to hazards, such as unprotected heights and heavy machinery. The claimant can understand, remember, and carry out simple, routine, repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have no contact with the general public. The claimant can perform low-stress work, defined as occasional decision-making and occasional changes in workplace settings.

(TR. 587, 645). Based on the finding that Plaintiff had no past relevant work, the decision proceeded to step five. At the administrative hearing, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the

national economy that Plaintiff could perform. (TR. 82-83).[2] Given the limitations, the VE identified jobs from the Dictionary of Occupational Titles. (TR. 83). The ALJ adopted the testimony of the VE and both the ALJ and the Appeals Council concluded that Ms. Harris was not disabled based on her ability to perform the identified jobs. (TR. 588, 652).

## IV.    ISSUES PRESENTED

Plaintiff alleges error in the ALJ's: (1) step three findings, (2) step four findings, including treatment of various medical opinions and the RFC determination, (3) credibility determination, and (4) failure to call a medical expert.

## V.    STEP THREE

Neurologist Dr. Stephen Smedlund treated Plaintiff from July 2009 to January 2012 for a seizure disorder. (TR. 251, 252, 255-257, 490, 508-510, 528-534, 580-581). On January 24, 2012, Dr. Smedlund issued an opinion which, in part, involved a finding that Ms. Harris had satisfied the criteria for a listed impairment. (TR. 580-581). Plaintiff: (1) challenges the ALJ's treatment of Dr. Smedlund's opinion and (2) challenges the ALJ's step three finding that Plaintiff did not meet a listed impairment. (ECF No. 16:15-18). Because the ALJ's determination of both issues relies on the same rationale, the Court will contemporaneously address both arguments.

---

[2] The VE testimony was taken at the first hearing on December 13, 2011. (TR. 82-83). But the ALJ in the instant case adopted the testimony and incorporated it into his decision as it was based on a hypothetical involving RFC limitations identical to the ones he found. *See* TR. 652.

## A.     Dr. Smedlund's January 24, 2012 Opinion

Medical Opinions are "statements from physicians . . . that reflect judgments about the nature and the severity of [a claimant's] impairments, including your symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a) & 416.9274(a). Although the record contains written reports documenting Plaintiff's various office visits to Dr. Smedlund,[3] the only "medical opinion" at issue is the one offered by Dr. Smedlund on January 24, 2012. That opinion consisted, in part, of Dr. Smedlund's belief that Plaintiff was presumptively disabled under Listing 11.02. (TR. 581). In the first administrative decision, the ALJ acknowledged the January 24, 2012 opinion, but gave it "limited weight." (TR. 23-24).

## B.     The Appeals Council's Remand

On remand, the Appeals Council acknowledged the ALJ's treatment of the opinion, but ultimately found the analysis deficient. (TR. 805-807). Accordingly, on remand, the Appeals Council ordered the ALJ to:

- Further evaluate whether Ms. Harris' seizure activity satisfied Listing 11.02 or 11.03 and

- Specifically address the opinion of Dr. Smedlund, explaining whether it should be credited or rejected and if the latter, to provide specific and legitimate reasons.

(TR. 807).

---

[3]  *See* TR. 251, 252, 255-257, 490, 508-510, 528-534.

### C.  The ALJ's Step Three Finding and Treatment of Dr. Smedlund's Opinion Regarding Listing 11.02

At step three, the ALJ acknowledged that the Appeals Council had instructed him to evaluate:

- Whether Plaintiff had satisfied either Listing 11.02 or 11.03, and

- Dr. Smedlund's opinion that Ms. Harris had met Listing 11.02.

(TR. 632-633). The ALJ complied with the directives and ultimately:

- concluded that Plaintiff did not meet either Listing and

- rejected Dr. Smedlund's opinion that Plaintiff had met Listing 11.02.

(TR. 633). The ALJ's reason for his findings on both issues was a lack of objective evidence documenting Plaintiff's drug serum levels. (TR. 632-634, 636, 637, 646). The Appeals Council adopted these opinions and the Court affirms the findings of the Appeals Council.

## Step Three

At step three, "[t]he claimant has the burden . . . of demonstrating, through medical evidence, that her impairments "meet *all* of the specified medical criteria" contained in a particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

The ALJ's step three findings were based on an accurate reading of the Listings 11.02 and 11.03 at the time the ALJ issued his opinion. At that time, the regulations clearly stated:

> When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically

inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption or metabolism of the drug. Blood drug levels should be evaluated in conjunction with all other evidence to determine the extent of compliance.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.00A. Plaintiff attempts to argue that drug serum levels are irrelevant *now*, because the Listings for 11.02 and 11.03 changed after the ALJ's decision and the new listings no longer require consideration of blood serum levels. (ECF No. 16:12). But Plaintiff's argument is misguided, as the ALJ was bound by the regulations as they existed when he rendered his decision. *See Baldwin v. Barnhart*, 167 F. App'x 49, 50, n.1 (10th Cir. 2006) (noting proper citations "to the regulations that were in effect at the time of the ALJ's decision"). Thus, the Court affirms the Appeals Council's findings that Plaintiff did not satisfy the criteria for a listed impairment.

## Dr. Smedlund's Opinion Regarding Listing 11.02

In evaluating Dr. Smedlund's opinion that Plaintiff satisfied Listing 11.02, the ALJ considered the opinion under the proper framework of *Watkins v. Barnhart*, as instructed by the Appeals Council. (TR. 634-643). In *Watkins*, the Court explained that the ALJ should first determine whether the opinion qualified for "controlling weight." *Watkins*, 350 F. 3d 1297, 1300 (10th Cir. 2003). This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. *Id.* If controlling weight is declined, the ALJ must assess the opinion under a series of factors which include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship,

including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.*

Employing the standard, the ALJ declined controlling weight to Dr. Smedlund's opinion, stating:

> Dr. Smedlund's opinion[ ] [is] not entitled to controlling weight because [it] [is] not "well supported" by medically acceptable clinical and laboratory diagnostic techniques [and] [is] "inconsistent" with the other substantial evidence in the claimant's case record.
>
> Dr. Smedlund's January 2012 opinion finds the claimant has seizures at the required frequency level to meet the listings, but that is only part of the required analysis. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of drug serum levels in the medical evidence of record.

(TR. 637). Even so, the ALJ continued the analysis and evaluated each of the regulatory factors, providing a detailed analysis of each factor. (TR. 638-641). Ultimately, however, the ALJ rejected Dr. Smedlund's opinion that Plaintiff had met Listing 11.02, stating:

> The Administrative Law Judge found no evidence of record concerning any laboratory testing showing drug serum levels for the claimant's prescribed anticonvulsant drugs. Without these drug serum levels, the record is not established that her condition persisted despite prescribed treatment for at least three months. The overall evidence of record is insufficient to show the claimant's condition meets or equals a listed impairment.

(TR. 643). The Appeals Council provided a brief summary of the ALJ's discussion and adopted the ALJ's findings. (TR. 586). The Court affirms the Appeals Council, noting that

the ALJ applied the proper standard for evaluating the opinion and provided a specific, legitimate reason for rejecting it.

## VI.    STEP FOUR

At step four, the ALJ concluded that Ms. Harris retained the RFC to:

[P]erform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is to avoid all exposure to hazards, such as unprotected heights and heavy machinery. The claimant can understand, remember, and carry out simple, routine, repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have no contact with the general public. The claimant can perform low-stress work, defined as occasional decision-making and occasional changes in workplace settings.

(TR. 645). The ALJ reached this conclusion after reviewing the entire record, and evaluating the opinion evidence and Plaintiff's credibility. (TR. 645-651). Regarding opinion evidence, the ALJ: (1) rejected an opinion from Dr. Smedlund, (2) rejected an opinion from consultative examining psychologist, Dr. Melanie Talley,[4] and (3) gave "great weight" to opinions from State Agency physicians, Dr. Suzanne Roberts and Dr. James Metcalf.

Ms. Harris alleges that the ALJ erred in his treatment of the opinions from Drs. Smedlund, Talley, Roberts, and Metcalf and that the RFC should have contained additional limitations to accommodate her seizures. (ECF No. 16:4-13, 15-23). The Appeals Council adopted the ALJ's recommendations regarding Plaintiff's RFC and his treatment of various medical opinions. (TR. 585-588). The Court affirms the Appeals Council's decision.

---

[4]  In the decision, the ALJ states that he gave "little weight" to Dr. Talley's opinion, but in reality, he rejected the psychologist's opinion which stated that Ms. Harris was unable to work.

## A.    The Relevant Evidence

### Dr. Roberts

At the initial level of the disability determination, Dr. Roberts authored two opinions-dated April 5, 2010 and May 26, 2010. (TR. 1287, 463-470). In the first opinion, Dr. Roberts noted that Plaintiff had alleged disability owing to seizures. (TR. 1287). Dr. Roberts had reviewed information submitted from Plaintiff's father regarding his daughter's seizures, notes from Plaintiff's treating physician, and documentation regarding seizure medication. (TR. 1287). Ultimately, Dr. Roberts: (1) noted that medication had resulted in a reduction of seizures, and (2) asked for additional records to determine whether Ms. Harris was "having listing-level seizure frequency." (TR. 1287).

On May 26, 2010, Dr. Roberts completed a Physical Residual Functional Capacity Assessment. (TR. 463-470). There, Dr. Roberts repeated her earlier findings and noted an additional record related to an emergency room visit, an increase in seizures and medications, and findings made by a consulting neurologist and a treating neurologist that Plaintiff was suffering from "nonepileptic seizures." (TR. 468). Ultimately, Dr. Roberts opined that Plaintiff should avoid driving, operating dangerous or fast moving machinery, working in unprotected heights or any other situation which would place her at risk of injury. (TR. 470).

### Dr. Metcalf

At the reconsideration level of the disability determination, agency physician Dr. Metcalf completed a Physical Residual Functional Capacity Assessment on February 23,

2011. (TR. 519-526). Dr. Metcalf repeated Dr. Roberts' objective findings and summarized additional evidence which had post-dated that opinion, including a diagnosis of "partial seizure disorder with secondary generalizations." (TR. 526). At that time, Dr. Metcalf noted that the agency had received no additional evidence regarding the frequency of seizures, what medications Plaintiff was taking, drug serum levels for any medication, and information regarding whether Plaintiff had been compliant with taking medication. (TR. 526). Ultimately, Dr. Metcalf also concluded that Plaintiff should avoid driving, operating dangerous or fast-moving machinery, and working in unprotected heights. (TR. 526).

## Dr. Smedlund

On March 7, 2011, Dr. Smedlund completed a "Report of Examination for Seizure Disorder" for Plaintiff. (TR. 528). Dr. Smedlund stated that based on family reports, Ms. Harris was experiencing seizures twice a week and her most recent seizure had occurred on March 7, 2011. (TR. 528). The physician characterized the seizure as diurnal and convulsive, with loss of consciousness, alteration of awareness, and postictal confusion for approximately 15-20 minutes. (TR. 528). Dr. Smedlund continued treating Plaintiff through January 24, 2012. (TR. 580-581).[5]

---

[5]  As stated, the record contains additional treatment records from Dr. Smedlund, but the only "medical opinion" at issue is the March 7, 2011 report.

**Dr. Talley**

On April 22, 2010, licensed psychologist, Melanie Talley, performed a one-time mental status evaluation on Plaintiff and prepared a report. (TR. 460-462). Ms. Harris reported some stressful life events and relayed her history regarding seizures. (TR. 460-461). Ms. Harris also told Dr. Talley that legally, she was not allowed to drive until she had been cleared by a physician. (TR. 461). Following a brief cognitive exam, Dr. Talley stated that Plaintiff's seizure disorder "ha[d] clearly impacted her ability to perform her basic and instrumental activities of daily living," Plaintiff was "unable to work at this time," and her prognosis for securing and maintaining employment was "poor." (TR. 461-462).

## B.     The ALJ's Treatment of the Opinion Evidence

In the decision, the ALJ thoroughly reviewed the evidence from Drs. Roberts, Metcalf, Smedlund, and Talley. Ultimately, the ALJ rejected: (1) the opinion from Dr. Smedlund regarding the nature and frequency of Plaintiff's seizures and (2) the opinion from Dr. Talley that Plaintiff was unable to work. (TR. 650-651). Instead, the ALJ gave "great weight" to opinions from Drs. Roberts and Metcalf, who opined certain restrictions related to hazards which the ALJ adopted and incorporated into the RFC. (TR. 650).

### The ALJ's Evaluation of Dr. Smedlund's Opinion

The ALJ rejected Dr. Smedlund's opinion citing:

- a lack of objective evidence supporting Plaintiff's seizures,

- the fact that Dr. Smedlund's opinions were based solely on allegations reported by Ms. Harris and her parents, whom the ALJ had discredited,

- a lack of treating relationship with Dr. Smedlund after January 2012, and

- evidence which post-dated Dr. Smedlund's treatment of Plaintiff which indicated that she was no longer suffering from seizures which required any treatment,

(TR. 639, 640, 641, 643, 646-647, 650). The ALJ's rationales are supported by substantial evidence in the record.

For example, the ALJ cited a lack of objective evidence to support the existence of Plaintiff's seizures—including a normal EEG, normal CT, no objective findings regarding bite marks on Plaintiff's tongue after she had reported biting her tongue during a seizure, and no drug serum levels which would show whether Plaintiff was responding to anticonvulsive medication. (TR. 639-640); *see* TR. 424, 499 (normal EEG), 444 (normal brain CT), 503 (normal brain MRI). The ALJ recognized that a negative EEG was not dispositive, but relied heavily on the lack of drug serum levels from which to analyze whether prescribed drugs were adequately absorbed by Plaintiff or in the therapeutic range. (TR. 640). The ALJ also relied heavily on the fact that Dr. Smedlund had never personally witnessed Plaintiff have a seizure and that his treatment and opinions appeared to be solely based on reports from Plaintiff and her parents, which the ALJ had discounted. (TR. 640, 649-650).

First, the ALJ discounted the reports from Plaintiff's parents, citing: (1) a lack of medical training to report seizures, (2) bias from the parents due to their relationship with Plaintiff, and (3) "most importantly" the fact that the reports were not consistent

with the credible opinions and observations by medical doctors and the overall record in the case. (TR. 650).

Second, the primary source of information regarding Plaintiff's seizures came from Plaintiff herself, which the ALJ discredited through numerous examples which attacked Plaintiff's veracity. For example, the ALJ noted that in August 2012, Plaintiff was admitted to an inpatient mental facility because she had tried to fake her own murder and blame it on her ex-husband. (TR. 640, 647, 1216). The ALJ also relied on a discrepancy between Dr. Talley's report and Plaintiff's testimony at the hearing on January 26, 2016. (TR. 640-641, 650). Following a consultative examination, Dr. Talley reported Plaintiff's statement that due to her seizures, she was legally unable to drive until she had been cleared by a physician. (TR. 461). But at the hearing on January 26, 2016, Plaintiff stated that she had a valid license and had driven despite her seizure activity. (TR. 732-733).

In addition to statements made by Plaintiff which generally undermined her truthfulness, the ALJ relied on specific examples in the medical record which indicated that following Dr. Smedlund's final treatment in January 2012, Plaintiff had reported that her seizures and related symptoms had all but disappeared. For example, in December of 2012, Plaintiff reported to her primary care physician, Dr. Arvindkumar Bhatka, that she was no longer taking anti-seizure medication and she had not had a seizure since May 2012. (TR. 1177). The ALJ also cited a February 2013 emergency room record where Plaintiff reported that she had been seizure free for two years, but during that period of time, Plaintiff had reported ongoing seizures and presented a "seizure diary" to Dr.

Smedlund which reported 38 seizures between December 14, 2011 and January 3, 2012. (TR. 640, 647, 1148, 983-987). Finally, as noted by the ALJ, in March 2014, Plaintiff told Dr. Bhatka that her neurologist had not recommended treatment for her seizures and in October 2014, Plaintiff reported being on no seizure medication at that time. (TR. 647, 648, 1192, 1204).

In sum, the ALJ rejected Dr. Smedlund's opinions because they had lacked objective evidence and been based solely on subjective reports which the ALJ had properly discounted. *See White v. Barnhart*, 287 F.3d 903, 907-908 (10th Cir. 2002) (ALJ reasonably discounted treating physician's opinion, much of which had been based on Plaintiff's subjective statements); *Paulsen v. Colvin*, 665 F. App'x 660, 665 (10th Cir. 2016) (no error in rejecting treating physician's opinions which had been based solely on self-reporting and the ALJ had discounted the plaintiff's credibility); *Rivera v. Colvin*, 629 F. App'x 842, 845 (10th Cir. 2015) (affirming ALJ's treatment of examining physician because the opinion had "relied on [Plaintiff's] subjective complaints, which the ALJ found were incredible" and noting that in weighing a medical opinion, "it was entirely appropriate for the ALJ to consider where [the physician] got [his] information").

## The ALJ's Evaluation of Dr. Talley's Opinion

In addition to rejecting Dr. Smedlund's opinion, the ALJ also rejected Dr. Talley's opinion that Plaintiff was unable to work because the opinion: (1) concerned an issue that was reserved to the Commissioner, and (2) had been based on the psychologist's assumptions that Plaintiff's statements to her had been accurate. (TR. 651). Plaintiff

concedes the validity of the first rationale,[6] and as discussed, the second rationale finds significant support in the record and case law supports the rationale as a sufficient basis on which to discount Dr. Talley's opinion. *See supra*.

Plaintiff alleges that the ALJ "cherry-picked" Dr. Talley's opinion, improperly citing it to support his "Part B" findings regarding Plaintiff's mental impairments, while rejecting the psychologist's ultimate finding that Plaintiff was unable to work. But Plaintiff's argument misses the mark--the findings that the ALJ cited in assessing Plaintiff's mental impairments were distinct from the ultimate opinion that Dr. Talley had rendered regarding Plaintiff's ability to work. It was within the ALJ's prerogative to consider Dr. Talley's opinions in assessing Plaintiff's mental impairments but at the same time reject her ultimate opinion on an issue that was reserved to the Commissioner.

### The ALJ's Evaluation of Opinions from Drs. Roberts and Metcalf

In a distinct, yet related point of error, Plaintiff argues that the ALJ erred in affording "great weight" to the opinions from Drs. Roberts and Metcalf. Specifically, Plaintiff alleges that the opinions: (1) were "stale" because they pre-dated Dr. Smedlund's opinion, (2) lacked evidentiary support, and (3) were based on unclear findings. (ECF No. 16:8-12). The Court is not persuaded by any of the arguments.

First, the ALJ expressly acknowledged that the agency opinions pre-dated Dr. Smedlund's opinion, but ultimately the ALJ afforded more weight to the former opinions because they "[were] consistent with the record, including evidence received after Dr.

---

[6]  (ECF No. 16:16).

Smedlund's March 7, 2011 and January 24, 2012 opinions." (TR. 641). To support the finding of consistency, the ALJ pointed to:

- an October 31, 2014 consultative examination by Dr. Chaudry who noted that Plaintiff reported being on no seizure medication at that time, and

- two notations from emergency room physicians in February and March of 2013 where Plaintiff had reported being seizure free for two years, not currently on any seizure medication, and cleared to drive.

(TR. 647). The Court concludes that the ALJ's explanation is sufficient. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (affirming an ALJ giving "very little weight" to opinions from treating physicians based on evidence which post-dated the physician's reports, noting that "the ALJ's citation to contrary, well-supported medical evidence, satisfies the requirement that the ALJ's decision be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.") (internal citation omitted).

Second, Plaintiff argues that the ALJ should not have relied on the opinions because Dr. Metcalf's opinion reflects that the doctor did not have sufficient evidence to render an opinion. (ECF No. 16:10-12). In support of this argument, Plaintiff cites Dr. Metcalf's statement that on reconsideration, the agency did not have additional evidence regarding seizure activity, frequency, or related medications. (ECF No. 16:10, citing TR. 526). Ms. Harris reads this statement as "Dr. Metcalf saying the record is incomplete and needs to be updated." (ECF No. 16:10). The Court disagrees. Dr. Metcalf simply stated that the record contained no additional evidence regarding Ms. Harris' seizures. In support of her argument, Ms. Harris cites 20 C.F.R. § 416.912(d) which states that the SSA will

develop the claimant's medical history for at least the 12 months preceding the month in which the application was filed. (ECF No. 16:11). According to Plaintiff, the SSA failed in this regard, leaving Dr. Metcalf without a sufficient basis on which to form his opinion. But as noted by the ALJ, on April 28, 2010 and November 23, 2010, the SSA contacted Dr. Smedlund for his opinions, but in response, Dr. Smedlund only sent office treatment records, not actual medical opinions. Thus, despite the agency's attempt to gain additional information, none existed. But the non-existence of additional records was all that was noted by Dr. Metcalf. Contrary to Plaintiff's argument, the physician did not state that the record contained insufficient evidence on which to base his opinion.

Finally, Plaintiff argues improper reliance on the opinions, because "the agency doctors were not even certain what kind of seizures they were," citing Dr. Roberts' reference to the "possibility of pseudoseizures" and the unclear etiology of the seizures. (ECF No. 16:9; TR. 468). However, Dr. Roberts' citation to pseudoseizures and both doctors' references to unclear etiology were based on Dr. Smedlund's treatment notes, which Plaintiff urges the Court to adopt. *See* TR. 256, 251, 252, 490, 501, 508, 533, 534, 580.

## The RFC Determination

Plaintiff argues that the RFC should have reflected limitations related to her seizures, in addition to the existing precautions for Plaintiff to avoid all exposure to

hazards, such as unprotected heights and heavy machinery. (ECF No. 16:4-8; TR. 645).[7] In support, Plaintiff cites 13 records which post-date her onset date and document her seizures. (ECF No. 16:6-7). According to Ms. Harris, the frequency of Plaintiff's seizures should have resulted in additional limitations. (ECF No. 16:8). The Court rejects this argument.

In the decision, the ALJ thoroughly summarized all but two of the cited records. *See* TR. 611-613, 617-620, 623-624. The majority of the records were from Dr. Smedlund, whose opinion the ALJ rejected. Because the ALJ rejected Dr. Smedlund's opinion and gave a sufficient explanation for doing so, the Court finds no error in failing to include additional limitations based on the physician's opinion. *See Branum v. Barnhart*, 385 F.3d 1268, 1276 (10th Cir. 2004) (rejecting plaintiff's argument that additional limitations should have been included in the RFC because the argument was based on evidence from a treating physician which the ALJ had properly rejected). Additionally, Plaintiff has not identified specific limitations which he believes should have been included in the RFC. *See McNally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC

---

[7] Plaintiff also argues that the RFC should have included limitations relating to her headaches, but the Court will not consider this argument because Plaintiff fails to develop the argument. *See McAnally v. Astrue*, 241 F. App'x. 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations") (citation and internal brackets omitted).

assessment or discuss any evidence that would support the inclusion of any limitations")

(citation omitted). Ultimately, the ALJ stated:

> [T]he above [RFC] assessment is supported by the overall record, including but not limited to the generally benign findings on physical examination, lack of continuing treating relationship with her neurologist after [he] gave his medical source statement, the lack of continuing prescription for anticonvulsant drugs, sporadic mental health care and the treatment notes in evidence, activities of daily living and the opinion of the reviewing state agency medical and psychological consultants and the objective findings in the 2014 physician consultative examination.

(TR. 651). The Court concludes that the ALJ thoroughly considered the entire record, and provided a proper explanation for his RFC determination which was supported by the record and outlined in the decision. Thus, the Court rejects Plaintiff's argument as it pertains to the RFC.

## C.    Summary

In sum, the Court concludes that the ALJ considered all the opinion evidence using the proper framework, applying the regulatory factors, and providing specific, legitimate reasons for his treatment of the same. In addition, the Court finds that the RFC was supported by substantial evidence and no error existed based on a lack of additional limitations owing to seizures. The Appeals Council reached these conclusions,[8] and the Court affirms those findings.

---

[8]  *See* TR. 585-588.

## VII. CREDIBILITY

Ms. Harris challenges the ALJ's credibility determination, stating two things: (1) "Seizure activity or the lack thereof, or their origin are not credibility issues, they are medical issues" and (2) "Credibility should be determined based upon SSR 96-7p and the ubiquitous *Luna*. Those factors were not followed carefully here. In any event, the way in which Ms. Harris' seizures were used to defeat her credibility was error." (ECF No. 16:14).

As to Plaintiff's first contention, Ms. Harris apparently believes that the ALJ should not have discounted Plaintiff's seizures based on whether she was deemed credible. But because Plaintiff's seizures were based solely on her self-reporting, her veracity was a key factor in assessing the impairment. *See Atkinson v. Astrue*, 389 F. App'x 804, 808 (10th Cir. 2010) (affirming ALJ's assessment of credibility in adjudicating Plaintiff's report of seizures).

The Court will not consider Plaintiff's second argument because it is undeveloped and Plaintiff has not cited any specific examples of what factors were not properly considered. *See Kirkpatrick v. Colvin*, ___ F. App'x. ___, 2016 WL 5920745, at *3 (10th Cir. 2016) (rejecting Plaintiff's argument because it was undeveloped and "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

## VIII. FAILURE TO CALL A MEDICAL EXPERT

Finally, Plaintiff alleges error in the ALJ's failure to call a medical expert. (ECF No. 16:14-15). In doing so, Plaintiff presents two arguments, neither of which are persuasive.

First, citing Social Security Ruling (SSR) 96-9p, Ms. Harris states: "the ALJ should obtain an updated medical opinion from a medical expert where additional, new MER is received that could modify the State agency medical consultant's finding that the impairment(s) was not equivalent in severity to any impairment in the Listing of Impairments." (ECF No. 16:15). Second, Plaintiff states that Dr. Metcalf had requested additional records which had triggered the ALJ's duty to call a medical expert. (ECF No, 16:15).

At the outset, the Court notes that it is within the ALJ's discretion regarding whether to call a medical expert. *See* 20 C.F.R. §§ 404.1527(e)(2)(iii) & 416.927(e)(2)(iii). Indeed, Plaintiff has properly cited one of the discretionary circumstances under which an ALJ may choose to call a medical expert. *See* Social Security Ruling 96–6p, 1996 WL 374180 at *3 (July 2, 1996) ("When additional medical evidence is received that *in the opinion of the administrative law judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.") (emphasis added; footnote omitted). However, Plaintiff has failed to cite to any "additional evidence" and even if she had, it was up to the ALJ to determine whether such evidence would require testimony from a medical expert. *See supra*, SSR 96-9p, at *3. And regarding Plaintiff's allegations that Dr. Metcalf had requested additional medical records, that assertion is flatly wrong and Mr. Mitzner is cautioned against misrepresenting the record. *See* TR. 519-526. Thus, the Court concludes that no error occurred in the ALJ's failure to call a medical expert.

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **AFFIRMS** the Commissioner's decision.

ENTERED on May 12, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE